IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SEAN MARSHALL,

    *Plaintiff,*

vs.

MATTHEW WIEBE,

    *Defendant.*

Case No. 16-3014-EFM-KGS

**MEMORANDUM AND ORDER**

Plaintiff Sean Marshall, an inmate in the custody of the Kansas Department of Corrections, filed this lawsuit pro se alleging violations of his Eighth Amendment rights against cruel and unusual punishment and deliberate indifference to serious medical need. This matter comes before the Court on Defendant Matthew Wiebe's Motion for Summary Judgment (Doc. 23). Defendant argues that he is entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies and because Defendant is entitled to qualified immunity. For the reasons identified below, the Court grants Defendant's motion.

    **I.**    **Factual and Procedural Background**

At all relevant times, Plaintiff was an inmate housed at El Dorado Correctional Facility ("EDCF"). On March 20, 2015, corrections officer Daniel Bentz escorted Plaintiff to laundry to resize his sagging pants. Bentz asked Plaintiff what size he wore, and Plaintiff responded, "you

are the tailor you tell me." As a result, Bentz tried to restrain Plaintiff but could not because Plaintiff has a large upper body with short arms that makes him difficult to handcuff. Bentz then asked Defendant, who is also a correctional officer at EDCF, to assist him with another set of restraints. Together, Bentz and Defendant restrained Plaintiff and escorted him to the captain's office to discuss Plaintiff's insolent behavior.

While Plaintiff was there, he acted rude and disrespectful toward the captain. Bentz ordered him to stand up and be escorted to the clinic for segregation multiple times, but Plaintiff refused. Bentz and Defendant then forcibly escorted Plaintiff to the clinic using an alternate escorting procedure. Bentz placed his left arm underneath and through Plaintiff's right arm and placed his palm on Plaintiff's right shoulder. Defendant took Plaintiff's other side and placed his right arm under Plaintiff's left arm and his right hand on Plaintiff's shoulder.

Plaintiff alleges that on the way to the clinic he explained to Defendant that he's only an inch and a half away from being a dwarf and that as a result his arms are "severely short."[1] He further alleges that he told Defendant that he was in severe pain because his elbows were in an awkward position due to his short arms and the handcuffs Defendant and Bentz had used on him. Plaintiff alleges that he asked Defendant to use another escorting procedure or specialized handcuffs. Defendant refused Plaintiff's requests.

Plaintiff then began pushing against Defendant and tried to ram him into the wall. He also attempted to pull down with his arms and push his left shoulder into Defendant's rib cage. Defendant directed Plaintiff to stop pushing and pulling, but Plaintiff ignored the orders.

---

[1] Plaintiff has not been diagnosed with dwarfism. His height is 5'-3" and, at all relevant times, he weighed approximately 250 pounds.

Defendant and Bentz then took Plaintiff to the ground to maintain control. Additional correctional officers were called to help.

During the altercation, Plaintiff yelled derogatory statements at the officers. One officer noticed that Plaintiff continued to turn his head towards them, so she used a mandibular pressure point to gain control and placed a spit net over Plaintiff's face. While on the ground, Plaintiff passively resisted and refused all orders to stand up and get off the floor, so the officers placed him in a mobilized restraint chair and took him to the clinic.

Plaintiff refused all medical treatment at the clinic. One nurse reported that the officers had used force, but she did not note any injuries. She also noted that Plaintiff did not appear upset, emotional, or crying. A social worker noted that Plaintiff "was seen for segregation clearance" but he "refused to speak with" her even though he "was able to hold a conversation on the way to the cell house with Security." She also reported that he did not have any immediate mental health needs.

Plaintiff was then escorted back to the captain's office and later placed in segregation. Plaintiff alleges that while placing him in his new cell, Defendant "slam[med him] up against the wall of the cell[,]" "smashed his face into the wall while another officer cut [his] clothes off" to perform a strip search, and then "squeez[ed]" his elbow. Plaintiff was issued three disciplinary reports for "Disobeying Orders," "Threaten[ing] or Intimidat[ing] Any Person," and "Insub[ordination]/Disrespect Officer/Other."

Three days after the incident, on March 23, Plaintiff went to the clinic and informed Travis Nickelson, APRN, that Defendant placed too much pressure on his arm when he was escorted to segregation. Plaintiff reported that "he was taken down and that an SST officer fell on his left arm and that it has been messed up since then." Nickelson issued a "Belly Chain and/or alternate

-3-

cuffing, for one month, arm sling for seven days, and placed Plaintiff on pain relievers. Nickelson also requested an x-ray of Plaintiff's elbow which revealed "slight irregularity of the radial head cortex," which was "suspicious for a nondisplaced fracture." The reviewing doctor concluded that he "suspect[ed]" that Plaintiff sustained a "nondisplaced radial head fracture."

Follow up x-rays were taken approximately one month later, on April 6. The doctor who reviewed those x-rays concluded there was "questionable minimal defect at the articular surface of the radial head" which was "likely projectional, however a tiny nondisplaced fracture [was] not entirely excluded." The doctor found "[n]o additional acute fracture or dislocation." Follow up x-rays taken on April 17 revealed normal alignment and no fracture. Despite this, Plaintiff continued to report pain in his left elbow. On May 21, a doctor viewed additional follow up X-rays of Plaintiff's elbow and found no fracture or dislocation and no acute bone abnormality or interval changes since his prior exam.

Plaintiff filed a grievance for "Use of Excessive Force" on April 13. In his grievance, Plaintiff alleges that Defendant used excessive force and fractured his elbow on March 20. There are no records of any other grievances filed by Plaintiff related to this matter.

Plaintiff filed his Complaint on January 13, 2016. He brings his claims under 42 U.S.C. § 1983 alleging that Defendant violated his Eighth Amendment rights by using excessive force against him and through Defendant's deliberate indifference to Plaintiff's serious medical need. Defendant denies Plaintiff's allegations and asserts the affirmative defenses of failure to exhaust administrative remedies and qualified immunity. Defendant filed a motion for summary judgment on Plaintiff's claims, to which Plaintiff did not respond.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] When the party moving for summary judgment bears the burden of proof, as opposed to the nonmoving party, "a more stringent summary judgment standard applies."[4] Thus, in order to obtain summary judgment on a moving party's affirmative defense, the moving party "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[5] Only if the moving party meets this burden must the nonmoving party come forward and "demonstrate with specificity the existence of a disputed material fact."[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

Because Garcia is pursuing this action pro se, the Court must be mindful of additional considerations. The Court reviews his pleadings, including those related to the present motion for summary judgment, "liberally and hold[s] them to a less stringent standard than those drafted by

---

[2] Fed. R. Civ. P. 56(c).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

[5] *Id.* (citations omitted).

[6] *Hesterlee v. Cornell Cos. Inc.*, 351 F. App'x 279, 281 (10th Cir. 2009) (quotation marks, emphasis, and citation omitted).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

attorneys."[8]  However, the Court will not assume the role of advocate for the *pro se* litigant.[9] Likewise, Plaintiff's pro se status does not relieve him from the obligation to comply with procedural rules, including the Federal Rules of Civil Procedure.[10]

On the same day that Defendant filed his motion for summary judgment, he sent Plaintiff a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment explaining Plaintiff's burden under Fed. R. Civ. 56 and Local Rule 56.1.  Despite receiving this Notice, Plaintiff filed no response to Defendant's motion.  Under Fed. R. Civ. P. 56(e), if a party fails to properly address the moving party's factual assertions, the court may "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it."[11]  Therefore, the Court will review Defendant's motion to determine if he is entitled to summary judgment.

### III.  Analysis

**A.     Exhaustion of Administrative Remedies**

Defendant argues that the Court should grant summary judgment in his favor on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies.  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,

---

[8] *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (quotations omitted).

[9] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

[10] *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

[11] Fed. R. Civ. P. 56(e)(3).

or other correctional facility until such administrative remedies as are available are exhausted."[12] When a prisoner fails to present claims through the full administrative remedy process, such claims are subject to dismissal.[13] "Failure to exhaust is an affirmative defense under the PLRA."[14] Accordingly, the burden of proof is on Defendant.[15]

The grievance procedure for Kansas state prisoners is set forth in K.A.R. 44-15-102. That regulation sets forth a four-step procedure available to inmates: (1) an attempt at informal resolution; (2) a grievance report submitted to the appropriate unit team member; (3) submission of the grievance to the warden; and (4) submission of the grievance to the Secretary of Corrections.[16] "An inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process."[17] "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim."[18] Furthermore, K.A.R. 44-15-101b provides that "[g]rievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays, and holidays."

Defendant first argues that all of Plaintiff's claims fail because Plaintiff did not file his grievance within the 15-day period set forth in K.A.R. 44-15-101(b). Plaintiff's grievance alleges

---

[12] 42 U.S.C. § 1997e(a).

[13] *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted).

[14] *Id*. at 212.

[15] *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

[16] *Barnett v. Kansas*, 2016 WL 3618655, at *3 (D. Kan. 2016) (citing K.A.R. 44-15-101(b)).

[17] *Id*. (quoting K.A.R. 44-15-101b).

[18] *Id*. (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

that Defendant used excessive force and fractured his elbow on March 20, 2015. Thus, the date of the discovery of the event is March 20, and Plaintiff had until April 10 to attempt informal resolution and file his grievance. Plaintiff did not file his grievance until April 13. However, the Tenth Circuit has held that "if a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."[19] Defendant has not specifically cited to the responses Plaintiff received from his unit team or the warden regarding his grievance. But, the exhibits to the *Martinez* report, which Defendant cites to and relies upon in support of his summary judgment motion, indicate that the unit team and warden both accepted Plaintiff's late filing and considered it on the merits. Therefore, the Court declines to dismiss Plaintiff's claims on a timeliness basis.

In the alternative, Defendant argues that Plaintiff's claim for deliberate indifference to serious medical need fails because Plaintiff did not file any grievance for this claim. When an inmate exhausts his administrative remedies as to some, but not all claims brought under § 1983, the Court should dismiss the unexhausted claims and proceed with the exhausted claims.[20] Plaintiff's April 13 grievance makes no allegation that Defendant interfered with, denied, or delayed Plaintiff's access to medical care. Plaintiff therefore failed to exhaust his administrative remedies with regard to this claim, and the Court grants summary judgment in Defendant's favor.

**B.    Qualified Immunity**

---

[19] *Ross v. Cty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

[20] *See Jones*, 549 U.S. at 220-24 (discussing how courts should address complaints in which the prisoner failed to exhaust some, but not all, of the claims asserted in the complaint).

Defendant next argues that he is entitled to qualified immunity on Plaintiff's claims. "Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[21] Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[22] When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to demonstrate that (1) the defendant's actions violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established at the time of the conduct at issue.[23] Courts have discretion to decide the order in which to examine these two prongs.[24] Qualified immunity applies unless the plaintiff can satisfy both prongs of the inquiry.[25] Because the Court has already granted summary judgment to Defendant on Plaintiff's claim for deliberate indifference to serious medical need, it will only address whether Defendant is entitled to qualified immunity on Plaintiff's excessive force claims.

Plaintiff's Complaint sets forth three excessive force claims. First, Plaintiff alleges that Defendant used excessive force by placing Plaintiff in inappropriate handcuffs thereby putting his elbow in an awkward position and fracturing it when he slammed Plaintiff to the ground. Second, Plaintiff alleges that Defendant used excessive force by allowing him to remain handcuffed behind

---

[21] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[22] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

[23] *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

[24] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[25] *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir.2009) (citing *Pearson*, 555 U.S. at 232).

his back knowing of Plaintiff's elbow injury, placing him a mobile restraint chair while he was inappropriately handcuffed, and placing a spit-mask on him. And third, Plaintiff alleges that Defendant used excessive force by smashing or pressing Plaintiff against the segregation cell wall and squeezing his elbow.

The Eighth Amendment protects inmates from "cruel and unusual punishments."[26] The Supreme Court has concluded that this amendment imposes a duty on the government not to use excessive force against prisoners.[27] Accordingly, a prison official violates the Eighth Amendment's prohibition against excessive force if the official causes "unnecessary and wanton infliction of pain."[28]

To succeed on his excessive force claims, Plaintiff must prove both an objective and subjective component.[29] To establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."[30] "Not every push or shove . . . violates a prisoner's constitutional rights."[31] Only that physical punishment rising above a *de minimis* use of force is "sufficiently grave to form the basis of an

---

[26] U.S. Const. amend. VIII.

[27] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[28] *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

[29] *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

[30] *Id.*

[31] *Marshall v. Milyard*, 415 F. App'x 850, 852-53 (10th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)) (internal quotation marks omitted).

Eighth Amendment violation," provided that such force "is not of a sort repugnant to the conscience of mankind."[32] The focus is on the "nature of the force" used.[33]

To establish the subjective component, Plaintiff must show that Defendant "act[ed] with a sufficiently culpable state of mind."[34] "The subjective element of an excessive force claim turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[35] The following factors are relevant to this determination: (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the officials; and (5) any efforts made to temper the severity of a forceful response.[36]

### 1. Plaintiff's First Excessive Force Claim

In his first cause of action, Plaintiff appears to allege that Defendant used excessive force by placing him in inappropriate handcuffs thereby putting his arms in an awkward, painful position and by slamming him to the ground fracturing his elbow. Specifically, Plaintiff alleges that he should have been placed in specialized handcuffs because he was "only an inch and a half away from being a dwarf and [his] arms [were] severely short due to [his] deformity from almost being

---

[32] *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

[33] *Graham v. Sherriff of Logan Cty.*, 741 F.3d 1118, 1123 (10th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

[34] *Cochran*, 339 F.3d at 1212 (alternation in original) (citation omitted).

[35] *Id.* (quotation marks and citations omitted).

[36] *Whitley*, 475 U.S. at 321 (citations omitted).

a dwarf. He also alleges that while his arm was placed in a "vulnerable angle" Defendant "slamm[ed] his 400 lbs on his elbow."

This single cause of action appears to contain two claims—one based on Defendants' use of allegedly inappropriate handcuffs and one for Defendant's alleged action of taking Plaintiff to the floor. Looking first at the handcuff issue, the Court concludes that Plaintiff has not met either the objective or subjective components of an excessive force claim. Plaintiff does not allege that the handcuffs injured his elbow directly. He does not allege that he suffered any wrist injury or that the handcuffs left any marks. He only complains that the handcuffs caused his arms to be placed in a painful and awkward position increasing the risk of injury to his arms and elbows. This alleged use of force is *de minimis* and is not sufficient to sustain an excessive force claim.[37]

Plaintiff also has not shown that Defendant acted maliciously or sadistically when he placed Plaintiff in the allegedly inappropriate handcuffs. At that time, Plaintiff had no special wrist restraint or permissions, and medical staff had not issued a prescription for alternate cuffing. Thus, Defendant could not have known that the handcuffs placed Plaintiff's arms and elbows in a vulnerable position. Accordingly, Defendant has not met his burden with regard to the subjective prong of his deliberate indifference claim.

The Court next turns to Plaintiff's allegations that when Defendant took him to the ground he fractured Plaintiff's elbow. Defendant does not address these allegations in his motion. Regardless, Plaintiff's excessive force claim still fails because he has not shown that Defendant

---

[37] *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (stating that discomfort or redness caused by tight handcuffing is not sufficient to support an excessive force claim); *Jackson v. Simmons*, 2001 WL 1456859, at *6 (D. Kan. 2001) (finding that allegations that the handcuffs used by the defendant made an indention or mark in the plaintiff's wrists but did not cut the skin was a *de minimis* use of force).

performed these actions with a sufficiently culpable state of mind.[38] The undisputed facts show that on the way to the clinic, Plaintiff began pushing against Defendant and tried to knock him into the wall. Plaintiff also attempted to pull down with his arms and push his shoulder into Defendant's rib cage. Defendant ordered Plaintiff to stop, but Plaintiff refused to comply with his orders. Defendant then took Plaintiff to the ground to maintain control.

Based on this evidence, any force Defendant applied towards Plaintiff was performed to maintain discipline or control. There is no evidence that Defendant took these actions to purposely harm Plaintiff. Indeed, they appear to be necessary measures to control Plaintiff and ensure Defendant and Bentz's safety. Thus, Plaintiff has not satisfied the subjective component of this excessive force claim.

Overall, Plaintiff has failed to demonstrate that Defendant violated his Eighth Amendment rights when he placed Plaintiff in allegedly inappropriate handcuffs or when he took Plaintiff to the floor on the way to the segregation clinic. Therefore, the Court grants summary judgment to Defendant on this claim.

### 2.  *Plaintiff's Second Excessive Force Claim*

In Plaintiff's second claim, he alleges that Defendant used excessive force by allowing him to remain handcuffed behind his back knowing that he suffered an elbow injury, by placing him in the mobile restraint chair while handcuffed, and placing a spit mask on his face. This use of force is unlikely to satisfy the objective element of Plaintiff's claim. But, the Court will not address this aspect because Plaintiff clearly cannot succeed on the subjective element of his claim. After

---

[38] The Court declines to address whether Plaintiff has met the objective component of this excessive force claim.

Plaintiff was taken to the floor, he refused to comply with all orders and yelled derogatory statements at the officers. When one officer noticed that Plaintiff continued to turn his head toward the officers, she placed a spit net over Plaintiff's face. While on the ground, Plaintiff passively refused all orders to stand up and get off the floor, so another corrections officer ordered a mobile restraint chair to be used to take him to the segregation clinic.

It's not clear whether Defendant actively participated in any of this conduct. But, even if he did, these actions were taken to maintain discipline and control. During the altercation, Plaintiff refused all of the corrections officers' orders. Clearly, the officers needed to apply force to control him and that amount of force was proportional to Plaintiff's conduct. The Court therefore grants summary judgment on Plaintiff's second excessive force claim.

### 3. *Plaintiff's Third Excessive Force Claim*

Plaintiff's third cause of action alleges that Defendant used excessive force when placing him in segregation by slamming him into the cell wall and squeezing his elbow. These allegations, however, are not sufficient to satisfy the objective element of Plaintiff's excessive force claim. As noted above, "[n]ot every push or shove . . . violates a prisoner's constitutional rights."[39] "An inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim."[40]

The Tenth Circuit has applied these principles in situations similar to those presented in this case. For example, in *Rhoten v. Werholtz*,[41] the Tenth Circuit determined that allegations that

---

[39] *Marshall*, 415 F. App'x at 852-53 (citation omitted).

[40] *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9) (internal quotation marks omitted).

[41] 243 F. App'x 364 (10th Cir. 2007).

the prison official slammed the inmate against the wall, squeezed his nipples and buttocks, and pulled on his testicles firmly, causing great pain, constituted *de minimis* force and were insufficient to state an excessive force claim.[42] And in *Marshall v. Milyard*,[43] the Circuit found the prison guard's actions of grabbing the inmate's arm and digging his fingernails into it with enough force to injure the inmate were *de minimis*.[44]

In this case, Plaintiff alleges that Defendant slammed him against the cell wall and squeezed his injured elbow. While these allegations certainly allege use of force, such force is *de minimis* and not repugnant to mankind. Therefore, Plaintiff has not satisfied his burden to show that Defendant violated his Eighth Amendment rights. The Court grants summary judgment to Defendant on Plaintiff's third excessive force claim.

### C.     Conclusion

The Court grants Defendant's motion for summary judgment. Defendant has shown that Plaintiff failed to exhaust his administrative remedies on his deliberate indifference to serious medical need claim, and therefore, Plaintiff cannot proceed on that claim. In addition, Plaintiff has failed to establish that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment. Thus, Defendant is entitled to qualified immunity on Plaintiff's excessive force claims.

---

[42] *Id.* at 265. *See also Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1156 (10th Cir. 2005) (determining that the prison guard's actions of twisting the inmate's neck and hurting it were not sufficient to support an excessive force claim); *Jarrett v. Schubert*, 1998 WL 471992, at *1, *4 (D. Kan. 1998) (dismissing allegations that prison official " 'rammed' his elbow and firearm into her chest and 'slammed' and pinned her against the wall," causing bruising as *de minimis*).

[43] 415 F. App'x 850.

[44] *Id.* at 853.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 23) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 17th day of April, 2018.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE